# AFFIDAVIT OF SPECIAL AGENT GEOFFREY J. KELLY IN SUPPORT OF AN APPLICATION FOR A COMPLAINT AND ARREST WARRANT

I, Geoffrey J. Kelly, state:

## Introduction and Agent Background

1.  I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed for twenty-six years. Prior to my employment with the FBI, I served for three years as a police officer with the Metropolitan Transportation Authority Police Department in New York City. Since February 1996, I have been assigned to the Boston Division of the FBI. I am currently assigned to the Lakeville Resident Agency in Lakeville, Massachusetts, where my primary duty is the investigation of violent criminal offenses. Prior to my current assignment, I worked for approximately eight years on the Boston FBI's Violent Crimes Task Force. Throughout my career, I have participated in hundreds of violent crime investigations and during these investigations, I have executed search and arrest warrants, utilized informants, interviewed witnesses, and conducted surveillances.   In connection with this case I have consulted with agents of the FBI and forensic experts with training and experience in the field of child exploitation offenses.

2.  I submit this Affidavit for the limited purpose of establishing probable cause to support a Criminal Complaint charging Jacob Guerrero with sexual exploitation of a child and attempt to do so, in violation of 18 U.S.C. §2251.

3.  The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant and does not set forth all of my knowledge about this matter.

**Probable Cause to Believe That a Federal Crime Was Committed**

4.      On September 2, 2021, GUERRERO was arrested by the Wrentham, Massachusetts, Police Department on a state warrant issued for photographing, videotaping, or electronically surveilling partially nude or nude persons, in violation of M.G.L. c. 272, §105. The investigation leading to that arrest revealed that GUERRERO, while wearing a wig and women's clothing, had attempted, using pen cameras affixed to his shoes, to film women and girls at the Wrentham Premium Outlets using the bathrooms and store changing rooms.

5.      At the time of GUERRERO's arrest on September 2, 2021, officers also executed a state search warrant issued for GUERRERO's car, which revealed, among other things, an iPhone (serial #FFMWQP0MJC6C).  On or around September 7, 2021, state authorities obtained a search warrant to review the phone for "videos and images of unsuspecting victims in, nude, or partially nude that were surveilled and recorded at the Wrentham Village Outlets from July 31, 2021 to August 24, 2021."

6.      Analysis of the cellphone pursuant to that state search warrant revealed videos taken in the Wrentham Mall women's room as well as a dressing room of one of its stores. Employees of the store were interviewed, recognized GUERRERO, and reported that at least one customer had complained that GUERERRO had been waiving his foot at the dressing room while her teenaged daughter was changing.

7.      The analysis also revealed screen captures of apparent surreptitious recordings that had been created at locations outside of the Wrentham Mall in or around July 2020.  A further state search warrant was then obtained for all surreptitiously recorded videos on the iPhone.

**Discovery of Surreptitious Recordings of Minors by State Authorities**

8. A further state search warrant, authorizing a search of GUERRERO's iPhone for all surreptitiously recorded videos, revealed evidence of clandestine video recordings depicting both adults and a number of apparent children under the age of 18, who did not appear to know they were being recorded. The videos depicted the individuals in bathrooms, bedrooms, and other locations other than those that could be identified within the Wrentham Outlets. The clandestine nature of the recordings is evident in several ways: (1) the positioning of the camera - static, in the same place un-moving, and often off center to what is being recorded – indicating a camera that was placed and then left; (2) the nature of the victim's behavior – the victims are captured engaging in highly private, but routine, actions, such as using the bathroom, undressing and showering, all of which is accomplished in normal fashion; and (3) the seeming unawareness of the victims – unlike recordings where the subject is aware of a camera or a person recording, the individuals recorded are never looking directly at the camera.

9. Subsequent investigation and review of the forensic data for such videos has led investigators to identify the locations and some of the individuals depicted in the surreptitious recordings. Several videos were recorded in July of 2019 when GUERRERO was on vacation in New Jersey and several others were recorded at GUERRERO's family home in California. The locations were identified by an individual, whose identity is known to law enforcement, who had been present at, and was familiar with, the locations depicted.

10. By way of examples, in July of 2020 in California, two minor victims (among others) were secretly recorded in a bathroom. One video, approximately three minutes and two seconds long, depicts a male child who appears to be approximately 8 or 9 years old, who is

3

captured using the bathroom. The minor's genitals were exposed while urinating. The male child was subsequently identified as a friend of a family member who had been living at the Guerrero home in California at the time.

11. Other videos from that time period depict a female in her early teens. There were several videos of that minor, depicting her going to the bathroom, showering, and changing clothing. The videos depict the breasts and pubic area/genitals of the minor and the length of these video varies in length. The parents of that minor have identified their child based upon review of sanitized photos and have identified the location as the home of GUERRERO's mother's residence located in Woodland, CA. The minor in question would have been between 13 and 14 years old at the times these recordings appear to have been made.[1]

### The Federal Search Warrant

12. On December 17, 2021, this Court issued a federal search warrant authorizing the search of the content of iPhone seized from GUERRERO's car, for, among other things, evidence of the sexual exploitation of children, and attempt to do so, in violation of 18 U.S.C. § 2251.

### GUERRERO's Recording of "Minor A"

13. Among other things, a review of the content of the iPhone seized from GUERRERO's vehicle has revealed two videos recorded at or near the home of Minor A.

14. The first of the video was taken from the side of Minor A's home located to the left of the home (if one were facing the front door). The individual recording this video is positioned

---

[1] The parents of that minor have further disclosed that GUERRERO was adjudicated delinquent for a contact sexual offense against one of their minor children. According to the parents, GUERRERO, age 14, had engaged in a sexual contact offense with their three- year-old child. Since the filing of the state charges in Massachusetts, the parents of that minor have made disclosures to the Davis, California police department that GUERRERO engaged in contact sexual offenses against another of their children when the minor was five years old.

4

a distance from the home. Metadata reveals that the video was recorded on March 4, 2021 (the same date GUERRERO recorded written notes, detailed below, concerning his observations at the address of Minor A, ¶20), at approximately 8:09 p.m., using an iPhone 8 camera.[2] The location information embedded in the metadata for the video places the individual recording the video in the area of the side yard of Minor A's home.

15. The video is approximately one minute and thirty seconds long and captures the lit windows of the home and the lit front stairs of the home. In the upstairs window, the silhouette of an individual can be seen inside the room. The video appears to depict an individual who begins in a seated position and then stands as if pulling on pants or other clothing.

16. The second video is a recording made by a person standing just outside of a different upstairs window of the home. This window is located on the right-hand side of the home (as one faces it from the street) and in the back of the home. To reach the position from which the video was filmed, the individual filming the video had to walk a distance from the street or from another property to reach the home, and then climb onto the roof of a garage attached to the home. Metadata reveals that the video was recorded on March 17, 2021 at 8:07 p.m., using an iPhone 8 camera. The location information embedded in the metadata for the video places the individual recording the video directly on top of Minor A's home, and, the video was created at exactly the same time and date on which GUERRERO wrote, as detailed below (¶20), "[y]oungest changes at 8:07."

17. The video depicts the inside of a lit room appearing to be a child's bedroom. The video is recorded by an individual positioned outside the window of the room from the exterior of

---

[2] The phone seized from GUERRERO from which these videos were recovered is an iPhone 8.

the house viewing inward. Despite the presence of blinds on the window, the individual filming can clearly see into the lit room, and the recording clearly depicts events occurring inside the room. The recording, which is under one minute, depicts Minor A, an 11-year-old female child, as she is getting undressed.[3] The video captures Minor A undressing to the point of being completely naked. At one point, as Minor A walks toward the window, naked, the video reflects that the person holding the camera crouched, as if seeking to avoid being seen by Minor A. As the individual crouches, the camera angle radically changes, reflecting how close the individual filming is to the window. The video captured both full frontal and rear nudity of Minor A, including the genitals/pubic area of the child. Minor A's pre-pubescence is evident from the absence of secondary sexual characteristics such as pubic hair or developed breasts. The recording continues as Minor A gets dressed into her pajamas on the floor just under the window.

### **GUERRERO's Surveillance of Private Homes in Massachusetts**

18.  Additional review of the content of GUERRERO's cellphone, including saved "notes," has revealed written notes created by GUERRERO concerning his observations of several private homes.

19.  With respect to a specific street address in Norfolk, Massachusetts, at which Minor A resides, GUERRERO wrote:

> [*Street Address of Minor A*][4]
> Two cars, mom/dad, 2 daughters, 1 son
> Thursday 3/4 – two daughters home just after 8pm, younger
> showered right away. older changed right away.
> 1st car back at 8. 2nd around 820 with son

---

[3] Minor A has been identified by her father, who was been interviewed by authorities. Minor A was 11 years old at the time of the recording.

[4] The actual street address of Minor A is reflected in the note.

> Next time try view from front yard hill and back tree. House next door has one daughter, mom/dad. Mom and daughter home around 8.
>
> Monday 3/15- younger daughter to bed 8:30, parents say goodnight. No sign of older daughter from 8:15-8:50. Neighbors have good sight to one bedroom.  Motion lights and dog:(
>
> Wednesday 3/17
> 8-8:35
> Youngest changes at 8:07, appears to be no shower today or Monday, maybe every other day? Went into parent's room 8:10-825ish.  Oldest sitting downstairs on computer whole Time, already changed, no shower.  Probably same thing she Did on Monday 3/15[5]

20.     GUERRERO took notes with respect to several other private residences.  For example, with respect to a specific street address in Franklin, Massachusetts, identified herein as "Address 1,"[6] GUERRERO wrote:

> Mom/dad and 2 sons
> Thursday 3/11
> 6:35-650
> Kids in mom's room.  Mom brushes teeth, goes to bathroom, reads story to kids in her bed
> Friday 3/12
> 730-8
> No sign of anyone, dad came into bedroom around 8

21.     With respect to another specific street address in Norfolk, Massachusetts, identified herein as "Address 2," GUERRERO wrote:

---

[5] The dates referenced are believed to refer to March of 2021.  In addition to the dates reflected in the metadata above, March 4, 2021 was a Thursday, March 15, 2021 was a Monday, and March 17, 2021 was a Wednesday.

[6] The specific street addresses, or abbreviations thereof, are written in the "notes" recorded on the iPhone and are known to the affiant.  Those addresses are not identified herein to protect the privacy of the residents/victims residing in those homes.

> Mom/dad, daughter, son
> Thursday 3/4
> daughter showered maybe 7-730 on

22.    As to other specific addresses, GUERRERO wrote notes such as, "Teens?," "Good tree," and "Good trees maybe."

23.    I submit that there is probable cause to believe that GUERRERO's recording of Minor A depicts "sexually explicit conduct" and/or that at the time GUERRERO made the video he was attempting to create or capture "sexually explicit conduct."[7]

24.    As relevant here, the statutory definition of "sexually explicit conduct" includes the lascivious exhibition of the genitals or pubic area. Based upon GUERRERO's: reported prior juvenile adjudication for a contact sexual offense against a minor (¶11 n.1); the recent allegations by another victim that GUERRERO committed an additional contact sexual offense against that minor victim while GUERRERO was a juvenile (¶11 n.1); GUERRERO's efforts to surreptitiously record minors using bathrooms and changing rooms at the Wrentham Mall (¶¶4-7); GUERRERO's surreptitious recording of minors, using the bathroom and shower, (¶¶9-11); the fact that GUERRERO conducted surveillance and kept notes of his observations of multiple private homes, including specific notes of times when family members used the bathroom, went to bed, showered, or changed clothes (¶¶18-22); the fact that GUERRERO conducted surveillance of the home of Minor A on multiple occasions prior to recording the video of Minor A, taking specific written notes of when Minor A and her siblings changed clothes, showered, and went to bed (¶19); the

---

[7] The Court viewed screen captures from the video of Minor A and from the videos of the minors described in paragraphs 11-12 in authorizing the federal search warrant to search GUERRERO's phone for evidence of violations of 18 U.S.C. §2251. The video of Minor A, the video of the minors identified in paragraphs 11-12, and/or screen captures, are available for review at the Court's request.

8

fact that GUERRERO filmed more than one video at the home of Minor A (¶¶13-17); and the fact that GUERRERO climbed onto a roof of the home in order to record Minor A in her bedroom at a time GUERRERO knew from his prior surveillance efforts that Minor A was likely to be unclothed (¶¶16-17, 19); I submit that the recording of Minor A was clearly "intended or designed to elicit a sexual response in the viewer" and/or that GUERRERO created or was attempting to create such a recording.[8]

## CONCLUSION

25.     Based on all of the foregoing, I submit that there is probable cause to believe that on or about March 17, 2021, in the District of Massachusetts, GUERRERO did knowingly employ, use, persuade, induce, entice and coerce, Minor A, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, and the visual depiction was produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer and did attempt to do so.

Sworn to under the pains and penalties of perjury,

/s/ Geoffrey Kelly

_____
GEOFFREY KELLY
Special Agent
Federal Bureau of Investigation

Sworn to before me telephonically pursuant to Fed. Rule Crim. P. 4.1 on April 12, 2022.

_____
M. Page Kelley
Chief United States Magistrate Judge

---

[8] See *United States v. Amirault*, 173 F.3d 28, 31 (1st Cir. 1999), *citing United States v. Dost*, 636 F.Supp. 828 (S.D.Cal. 1986), *aff'd sub nom., United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987)).