# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA** <br><br> v. <br><br> **JACOB GUERRERO** | No. 22-cr-10142-NMG |

## DEFENDANT'S SENTENCING MEMORANDUM

Jacob Guerrero has pled guilty to one count of sexual exploitation of a child in violation of 18 U.S.C. § 2251 and one count of transportation of child pornography in violation of 18 U.S.C. § 2252(a)(1). Mr. Guerrero accepts responsibility for his actions and acknowledges the harm he has caused to the victims and their families.

We ask the Court to impose a sentence of 180 months in prison, which is the mandatory minimum term as well as the low-end of Mr. Guerrero's range as contained in the plea agreements between the parties. We ask the Court to impose the sentences for each count concurrently as contained in the plea agreement.

This sentence is consistent with the factors set forth in 18 U.S.C. § 3553(a) and will result in a sentence that is "sufficient, but not greater than necessary" to serve the purposes of sentencing under the circumstances of this case, which include: (1) Mr. Guerrero's remorse and commitment to rehabilitation and 2) the lifetime collateral consequences Mr. Guerrero will face following his sentence. *United States v. Kimbrough*, 128 S. Ct. 558 (2007); *United States v. Booker*, 125 S. Ct. 738 (2005); *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008); *United States v. Rodriguez*, 527 F.3d 221 (1st Cir. 2008). As reserved within the plea agreement, Mr. Guerrero objects to the

application of the U.S.S.G. § 4B1.5(b) Pattern of Activity enhancement. He also opposes Special Condition #6 of Supervision, as set forth in the Presentence Investigation Report, Pg. 27.

**History and Characteristics of Mr. Guerrero**

Mr. Guerrero feels deep shame and regret for his behavior. He has worked to change himself and his community through his actions since the beginning of this criminal proceeding. Mr. Guerrero's mother, Kathy Guerrero, wrote a letter offering insight into this change. She describes how she witnessed him recognize the hurt he caused for the instant offenses.[1] She saw him self-enroll in therapy, join two men's groups, and go to Alcoholics Anonymous, where he secured a sponsor, so he could reshape his mind and put his prior conduct in the past.[2] All of this was on Mr. Guerrero's own volition and preceded the federal arrest.[3]

Mr. Guerrero was originally released after his charge in Wrentham District Court for related conduct that has since been dismissed. In November of 2021, immediately following his release from the Wrentham Court, he returned to California to live with his parents. While there, he began what he acknowledges will be a lengthy road to rehabilitation and reform. Kenton Keithly, a small group counselor in Vacaville, California, oversaw Mr. Guerrero's 1-on-1 and group counseling during this period and witnessed "the beginning of a healing process" wherein Mr. Guerrero "was transformed by recognizing the wrong he had done and the changes that would lead him to restoration and repair."[4] This restorative process not only addressed the conduct in the instant offenses, but the life experiences that brought him to that moment.

---

[1] Letter from Kathy Guerrero.
[2] Id.
[3] Id.
[4] Letter from Kenton Keithly, Small Group Counselor with Father's House Vacaville, CA.

Mr. Guerrero's childhood was marked by a turbulent and ever-changing environment. He rotated between public school and home school throughout his childhood, growing up in Davis, California. As a result, his main social network was his family. However, his family was not a paradigm of care and support. The sixth of seven children, Mr. Guerrero was six years old when his parents divorced. He was also six years old when he first had several sexual encounters with a peer who was around the same age. Mr. Guerrero wrote about this experience, saying that he felt "overwhelming shame" after this incident, and it "opened a can of worms" as he was exposed to porn shortly after. Mr. Guerrero has strengthened his capacity to reflect on how those experiences are relevant to the instant offense, where he specifically describes how that shame turned into a drive to feel loved and accepted, even if he could only find it in children.[5]

Mr. Guerrero recalls being verbally and emotionally abused by his father and older brothers. This abuse and bullying led to Mr. Guerrero feeling like the outcast of his family. Mr. Guerrero became suicidal at age ten and has since struggled with self-harm at various times. Mr. Guerrero was close with his maternal grandmother who had helped him overcome a speech impediment. She passed away when Mr. Guerrero was twelve. Mr. Guerrero's social isolation pushed him to become increasingly rebellious, but he has come to reconcile this troubled history through active participation and reflection on his behavior during his detention at Wyatt. Despite many challenges, he was able to attend college.

Mr. Guerrero has been detained on this matter since April of 2022. He has utilized this time in pre-trial detention to become an active participant in as much programming and self-reflection as possible. Through this work, he is demonstrating a determination to reflect on his

---

[5] Id.

past and begin rebuilding himself. He has engaged in one-on-one and group counseling while inside Wyatt and is eager to continue engaging in therapeutic services. Mr. Guerrero has joined a book club and undertaken several academic courses. He has acquired thirteen certificates, ranging from courses on managing stress, living with others, and a sex offender treatment program.[6] Most importantly to him, Mr. Guerrero has recommitted himself to his Christian faith, joining a bible study with peers and working with Wyatt Chaplain Leo Mogavero. He is working through his mental health and substance abuse issues to address the challenges and life experiences that have contributed to his behavior. We provide the Court with letters from Mr. Mogavero as well as Betsy E. Ricci, the lead therapist in the sex offender unit at Wyatt.

Ms. Ricci describes that Mr. Guerrero,

*demonstrated good insight into his low self-esteem, identifying where it developed and how his poor self-image transitioned into behaviors triggered by negative feelings, schemas, and negative core beliefs. Mr. Guerrero was able to recognize how those core beliefs contributed to poor boundaries, a lack of concern for others, and poor communication skills. Mr. Guerrero has built a foundation to now explore further and to work towards improving his self-image and confidence through the use of his coping skills, such as utilizing his supports (family and therapy), his faith, and communicating his needs effectively.[7]*

Mr. Guerrero acknowledges the scope of the harm he has caused. In a recent letter, he acknowledges that his victims' trauma can manifest as sleepless nights, night terrors, not being

---

[6] *See* combined certificates of completion.
[7] Letter from Betsy E. Riccio, LMHC, Wyatt Detention Facility, 2025.

able to form healthy relationships, a lack of trust, and a variety of mental health problems.[8] He realizes that he contributed to the fears of families and neighborhoods that the world is full of evil people, and that "this is not what parents should feel when raising their children."[9] Mr. Guerrero acknowledges that he must participate in the prevention of further harm by continuing in mental health programs and Alcoholics Anonymous, and applying daily practices to not act out when triggered.[10]

Mr. Guerrero has been detained for three years and has spent that time genuinely working towards a better understanding of himself, his conduct, and the harm caused. Mr. Guerrero is committed to reflection and rehabilitation, searching within himself to understand why he did what he did and how he can improve himself mentally, physiologically, neurologically, and spiritually. By establishing new habits of transparent communication, relationship building, and therapeutic counseling, Mr. Guerrero is determined to ensure that the breakdown in social functioning that led to the instant offense does not happen again.

*Substance Abuse*

Mr. Guerrero has struggled with substance abuse since he was a thirteen-year-old boy. His performance in school suffered, and he faced regular discipline. According to his mother, Mr. Guerrero took several trips to the emergency room for alcohol poisoning.[11] However, when he was 17, Mr. Guerrero then gave up alcohol for the first time, after he crashed his sister's car and broke his ankle.[12] With his abstinence from alcohol, his performance in school improved and

---

[8] Letter from Jacob Guerrero, 2025.
[9] Id.
[10] Id.
[11] Letter from Kathy Guerrero.
[12] Id.

he became increasingly involved in his church community.[13] He specifically formed a close mentorship with the youth pastor. However, when he was 20, Mr. Guerrero learned that his youth pastor mentor had sexually abused his younger sister. This immense betrayal catalyzed a return to self-harm and alcohol abuse, which he hid from the people closest to him. Between the age of 21 and 23, Mr. Guerrero's alcohol consumption significantly increased, and he was drinking five to seven drinks daily. According to Mr. Guerrero, two of his siblings have also been treated for substance use disorder in the past.

In contrast to his unstable teenage years and following his arrest in the related case in Wrentham, Mr. Guerrero turned a corner when he confronted his struggle with addiction in October 2021. He has been sober since October 30, 2021, and is committed to staying so. Prior to his detention, he participated in Celebrate Recovery, a Christ-centered support group, beginning his long journey toward recovery. He has strong social and community support, particularly from his mother. We also note that Mr. Guerrero very much seeks and needs alcohol abuse treatment and looks forward to continuing that treatment both inside the BOP and in the community when he is released.[14]

*Mental Health*

Mr. Guerrero has a history of mental health issues. Mr. Guerrero was diagnosed with Impulse Control Disorder at age 16 and has had several episodes of transient suicidal ideation in the past. His mother describes how Mr. Guerrero displayed destructive behavior and was

---

[13] Id.
[14] We clarify this in contrast to p. 109 in the PSR.

generally a very troubled young man during his period of teenage alcoholism, until he strengthened his relationship with his faith and religious community.

Mr. Guerrero has been participating in therapy on a weekly basis for several years now. He has learned how to use the "Good Lives Model" to discuss his charges, sexual deviancy, coping mechanisms, empathy towards victims, offense cycles, effective communication, and self-analysis. Specifically, he writes about learning "how to manage my emotions/thoughts from Cognitive Behavioral Therapy (CBT) by changing the thought, change the emotion, change the behavior."[15] Furthermore, Mr. Guerrero began addressing his actions in therapy in California during his release in 2021, which included sex-specific counseling.[16]

**Nature & Circumstances of This Offense**

The crime Mr. Guerrero committed is one of the most serious seen in our courts and the mandatory minimum punishment reflects that. Mr. Guerrero takes accountability for his conduct, and he knows that his actions deserve consequences, which he is willing to accept. He acknowledges that many families have been impacted by his actions and will continue to be for years to come. While his work in understanding the harm he has caused will never make the victims whole, it is a step in the right direction, particularly in a case as serious as this.

---

[16] We dispute the assertion in the PSR on page 37 that he has never engaged in this type of treatment.

**The Sentencing Guideline Range**

Mr. Guerrero asks the Court to adopt the following guideline calculation:

Base offense level is 32. U.S.S.G. § 2G2.1(a). Add four levels, because the victims in both offenses had not yet reached the age of 12. U.S.S.G. § 2G2.1(b)(1)(A). Decrease by three levels, because Mr. Guerrero has accepted responsibility for his crime. U.S.S.G. § 3E1.1. The adjusted total offense level is 33, in Criminal History Category I, resulting in a guideline range of 135-168 months.

Mr. Guerrero opposes the application of the pattern of activity enhancement under U.S.S.G. § 4B1.5(b) this proposed application is consistent with the intent of the parties in the plea agreement, which allowed the defendant to reserve an objection to the pattern enhancement.

### a. The Pattern of Activity Enhancement is Ill-Fitted for a Just Punishment

Mr. Guerrero has accepted responsibility for the instant offense and recognizes that prior charged and uncharged conduct is relevant to his sentencing. *See United States v. Gaffney-Kessell*, 772 F.3d 97, 100 (1st Cir. 2014) (holding guidelines permit consideration of "uncharged, dismissed, or pending offenses beyond the offense of conviction"). The pattern enhancement is not the proper conduit to consider such relevant conduct in this case. In an analogous case, *United States v. Rivera-Morales*, the trial judge sustained the defendant's objection to the application of the § 4B1.5(b) pattern enhancement where evidence of prior sexual conduct discovered on the defendant's phone did not clearly fall under the guideline's meaning of "prohibited sexual conduct." *See* 961 F.3d 1, 7 (1st Cir. 2020). On appeal, the First Circuit affirmed, finding that the judge could and did consider defendant's prior uncharged conduct in crafting an appropriate sentence despite not applying the enhancement. *See id.* at 18. The Pattern

of Activity enhancement under U.S.S.G. § 4B1.5(b) is not necessary for appropriate punishment in this case.

What the Court has before it is a case with an enormous mandatory minimum and a defendant who has never been incarcerated before. A fifteen-year sentence in these circumstances certainly accomplishes all of the goals of sentencing.

### b. Special Condition #6 is Not Required in the Interests of Justice

Finally, Mr. Guerrero opposes Special Condition #6, requiring that he submit to polygraph testing while on supervised release. Mr. Guerrero submits that this condition is not reasonably related to the purposes of sentencing set forth in 18 U.S.C. § 3553(a) and involves a "greater deprivation of liberty than is reasonably necessary." U.S.S.G. § 5D1.3(b); 18 U.S.C. § 3583(d)(2).

Although district courts have significant discretion to impose special conditions of supervised release, that discretion is not unlimited. A district court may impose a special condition only if the district court first determines that the condition:

> (1) is reasonably related to the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);(2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in 18 U.S.C. § 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); *and*
>
> (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a).

18 U.S.C. § 3583(d); *United States v. Medina*, 779 F.3d 55, 60 (1st Cir. 2015). The statute does more than instruct district courts to ensure a "reasonabl[e] relat[ion]" between the condition and the sentencing goals the condition is intended to serve with respect to the individual defendant. The statute also requires district courts to ensure the condition "involves no greater deprivation

of liberty than is reasonably necessary" given who the defendant is, the defendant's offense and criminal history, and the ends of supervised release. *United States v. Roy,* 438 F.3d 140, 144 (1st Cir. 2006); *United States v. Smith,* 436 F.3d 307, 311 (1st Cir. 2006). The First Circuit recommends against taking a "broad-brush, untailored approach to sculpting the conditions of supervised release." *United States v. Hinkel*, 837 F.3d 111, 125 (1st Cir. 2016) (vacating, *inter alia*, conditions of supervised release that barred the defendant from accessing the internet without preapproval from Probation and barred the defendant from accessing 'sex-related' sites). And finally, precedent further requires that the special condition "have adequate evidentiary support in the record." *Roy,* 438 F.3d at 144.

Mr. Guerrero objects to the condition that he be required to submit to polygraph examinations. He is already subject to the standard condition that he answers truthfully all inquiries by probation. That much is appropriate and expected.

Nothing in the PSR or his personal history indicates that Mr. Guerrero has lied to law enforcement officers or has attempted to obstruct the investigation and prosecution of this matter. *Cf. United States v. Kempter*, 29 F.4th 960, 968 (8th Cir. 2020) (contemplating lack of candor with the court or probation office as the basis for a polygraph condition). Upon Mr. Guerrero's release from the Bureau of Prison following (at least) 15 years of incarceration, the U.S. Probation Department does not need to conduct a lie detector examination "to ensure that [he] is in compliance with the requirements of [his] supervision or treatment program." The polygraph condition involves an invasive procedure that is not necessary given all the other conditions of supervised release that will be imposed.

**Conclusion**

We ask the Court to impose a sentence of 180 months in prison, as contained in the plea agreement. The guidelines in this case provide the Court with little guidance in fashioning a just sentence. The Pattern of Activity enhancement under U.S.S.G. § 4B1.5(b) is a poor fit to the facts of this case and should not applied. Mr. Guerrero is facing the collateral consequences of being designated a sex offender — consequences that will follow him for the rest of his life. The mandatory minimum sentence of fifteen years is more than sufficient to reflect the severity of Mr. Guerrero's harmful conduct, to deter the commission of similar crimes, to protect the public from further harm by Mr. Guerrero, and to provide Mr. Guerrero with the time to receive treatment, continuing his road to rehabilitation. *See* 18 U.S.C. § 3553(a).  Considering Mr. Guerrero's commitment to sobriety and to rehabilitation, a sentence of fifteen years followed by five years of supervised release is a sentence that is "sufficient but not greater than necessary" to achieve justice here.

        Respectfully submitted,

        JACOB GUERRERO

        By his attorney,

        */s/ Jessica P. Thrall*
        Jessica P. Thrall
        #670412
        Federal Defender Office
        51 Sleeper Street, 5th Floor
        Boston, MA 02210
        Tel: 617-223-8061

CERTIFICATE OF SERVICE

I, Jessica P. Thrall, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on July 31, 2025.

                                           */s/ Jessica P. Thrall*
                                           Jessica P. Thrall